UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL TECHNOLOGIES
CONSULTANTS, INC.,

     Plaintiff,

v.

LESLIE T. STEWART, et al.,

     Defendants.
_____/

CIVIL ACTION NO. 07-13391

DISTRICT JUDGE JULIAN ABELE COOK

MAGISTRATE JUDGE DONALD A. SCHEER

# REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION**:

I recommend that Defendants' Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or for Removal to State Court be denied.

**II.**     **REPORT**:

    **A.**     **Procedural History**

Plaintiff filed its Complaint on August 14, 2007. On August 23, 2007, Plaintiff filed its Motion for Preliminary Injunction. On September 4, 2007, Defendants filed their Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or for Removal to State Court. On the same date, Defendants filed their Answer, Affirmative Defenses and Counterclaim. On September 10, 2007, Defendants filed their Response to the Motion for Preliminary Injunction. On September 18, 2007, Plaintiff filed its Reply to the Counterclaim. On the following day, Plaintiff filed its Reply Brief in Support of the Motion for Preliminary Injunction, together with its Response to Defendants' Motion to Dismiss. On September 20, 2007, the district judge entered an Order of Reference to the magistrate judge for a

Report and Recommendation on the Motion to Dismiss. On September 26, 2007, Defendants filed their Reply Brief in Support of their Motion to Dismiss. The Motion was brought on for hearing on November 7, 2007, and taken under advisement.

### B. Matters in Dispute

At all times pertinent to this action, Plaintiff, International Technologies Consultants, Inc., ("ITC") was engaged in a project involving the construction of a float glass plant in Saudi Arabia by the Arabian United Float Glass Company ("AUFGC"). The Complaint alleges that Defendants, Leslie T. Stewart and Stewart Engineers & Associates, Inc., sought to disrupt Plaintiff's work for AUFGC and other business relationships by unfair competition, tortious interference and trade libel. Plaintiff alleges that Defendants' efforts are typified by an April 4, 2007 letter from Defendants to AUFGC. The letter is attached to the Complaint as Exhibit A.

The Complaint in this action alleges that Defendants violated Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)). The Complaint further alleges that Defendants are guilty of unfair competition (Count II), intentional interference with contractual relations (Count III), intentional interference with business relationship or expectancy (Count IV), and trade libel (Count V) under Michigan law.

Because Count I is premised on the violation of a federal statute, this court has original subject matter jurisdiction pursuant to 15 U.S.C. §1121. Plaintiff alleges that the court has jurisdiction over its state law claims pursuant to 28 U.S.C. §§1338(b) and 1367(a). Defendants' Motion to Dismiss challenges the adequacy of the federal claim. Although the caption of the Motion indicates that it challenges this court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), the challenge to Plaintiff's federal claim is actually

2

premised on Fed.R.Civ.P. 12(b)(6) (failure to state a claim upon which relief can be granted). Only if Defendants succeed on that theory would their challenge to the court's subject matter jurisdiction over Plaintiff's state law claims become plausible under Fed.R.Civ.P. 12(b)(1). So long as the Count I claim survives, the challenge to this court's subject matter jurisdiction over the state law claims would be unavailing.

### C. Applicable Law and Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint must be dismissed if it fails to state a claim upon which relief may be granted. A complaint need not contain detailed factual allegations. Nonetheless, a plaintiff's obligation to provide the "grounds" of his entitlement to relief, as required by Fed.R.Civ.P. 8(a)(2), requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Rather, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that the allegations are true. Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). The pleading must contain something more than a statement of facts which creates a mere suspicion of a legally cognizable right of action. The court should proceed on the assumption that all the allegations of the complaint are true. A well pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely," and Rule 12(b)(6) does not countenance dismissal based on a judge's disbelief of the plaintiff's factual allegations. Id.

### D. Analysis

Plaintiff's Complaint represents that its business is related to consulting and overseeing the construction of float glass plants throughout the world. ITC is involved in

3

the construction of a float glass plant for the Arabian United Float Glass Company ("AUFGC") in Yanbu, Kingdom of Saudi Arabia. ITC alleges that Defendant Stewart Engineers consults in the design and fabrication of glass making systems. ITC maintains that Stewart Engineers competes with it, and that Defendants were part of a failed bid for the provision of services corresponding to those now rendered by ITC with regard to the Saudi Arabian glass plant.

Plaintiff asserts that, on or about April 4, 2007, Defendants issued a letter to AUFGC. The letter recognized ITC as float technology provider for the building of the facility in Yanbu, and expressed "grave concerns about the ownership of the float technology being used in this facility." The letter warned that, "in order to limit [AUFGC's] liabilities and ensure the success of this project," AUFGC must "consider the history of those involved" and question the ownership of the float technology being used, the record of ITC for successful completion of previous projects, any history of related litigation and other issues.

ITC alleges that Defendants have sent a similar letter to the company which provided the financing for AUFGC, and that they have made statements similar to those contained in the letter to parties responsible for a pending Russian project whose developers had indicated an intention to employ ITC rather than Stewart Engineers. Plaintiff claims that any assertion, express or implied, that Defendants had an ownership interest in the float technology provided by ITC for use in the Yanbu facility is objectively and verifiably false. ITC asserts that the April 4, 2007 letter contained false and misleading descriptions or representations of fact which, in commercial promotion, misrepresented the nature, characteristics and other qualities of the Plaintiff's commercial services and

activities as the float glass technology provider for the Yanbu facility. Plaintiff maintains that the statements in the letter were intended to deceive AUFGC as to the ownership of the float technology provided to it, and that the Defendants intended to influence AUFGC's purchasing decision with regard to the engagement of ITC as its technology provider. The Complaint alleges that the false and/or misleading descriptions and representations in Defendants' letter have harmed Plaintiff, that they are defamatory per se because ITC is accused of the commission of the theft of Defendants' technology, and that the representations were intended to harm Plaintiff's business reputation. Finally, ITC claims that, as a result of Defendants' actions, it was required to undertake additional obligations in its performance under the contract with AUFGC.

15 U.S.C. §1125(a)(2) provides, in pertinent part, as follows:

> (a) Civil Action. (1) Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which -
>
> \* \* \*
>
> (B) In commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her or another persons goods, services or commercial activities,
>
> shall be libel in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §1125(a)(2).

Defendants argue that Plaintiff has failed to state a cause of action upon which relief can be granted under the foregoing statutory language. Their argument is based upon the proposition that the conduct attributed to them by Plaintiff in the Complaint is not

5

"commercial advertising or promotion" as contemplated in the Lanham Act. Defendants correctly observe that the Act does not define "advertising" or "promotion". They urge the court to adopt the definition of those terms set forth in <u>Gordon and Breach Science Publishers, Ltd. v. American Inst. of Physics</u>, 859 F.Supp. 1521 (S.D. N.Y. 1994). The court in that case determined that, to qualify as "commercial advertising or promotion," a representation must be:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing customers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

859 F.Supp. at 1535-36. Defendants in this case submit that their April 4, 2007 letter to AUFGC contains no promotion of, or reference to, the services of Stewart Engineers and Associates, Inc., and thus fails to satisfy the <u>Gordon and Breach</u> criteria. Defendants further argue that a letter to one customer is not sufficient to constitute advertising or promotion, and that Plaintiff has failed to plead or demonstrate actual deception of the one or two recipients of the letter in issue.

### 1. <u>Promotion of Defendants' Services Over Those of Plaintiff</u>

Defendants assert initially that their April 4, 2007 letter to AUFGC "reflects an absence of any promotion of, or reference to, the services of Defendant, Stewart Engineers and Associates, Inc. . . .." They argue that the third prong of the <u>Gordon and Breach</u> criteria is thus unsatisfied, and that Plaintiff's Lanham Act claim must fail on that ground alone.

6

ITC, in response, asserts that Defendants' argument is factually unsupportable. I agree. Defendants' letter plainly warns AUFGC that, in order to limit its liabilities and ensure the success of its project, it must consider the history of those involved and question the ownership of the float technology being used. The second section of the letter is an extended discussion of Defendants' claimed interest in that technology. The next section of the letter purports to outline the history of ITC projects involving float glass technology, and ends with the admonition that "only those that are competent and can be trusted" should handle a float glass manufacturing project. I am satisfied that the unmistakable meaning and intent of the letter is the assertion that Defendants own the technology in question and are more competent and trustworthy consultants than Plaintiff as to its implementation.

ITC correctly observes that paragraphs 34 and 35 of the Verified Complaint allege that Defendants falsely represented their ownership of the float glass technology. Plaintiff also correctly observes that Section 43(a) of the Lanham Act is not limited in its application to situations in which Defendants "promote their services over those of the Plaintiff." Misrepresentations as to the nature, characteristics, qualities, or geographic origin of another persons goods, services, or commercial activities is also proscribed. Paragraphs 36 and 37 of the Verified Complaint expressly allege such misrepresentations as to Plaintiff's goods, services and commercial activities. Assuming, as I must for purposes of the instant motion, that all of the allegations of the Complaint are true, I am fully satisfied that ITC's allegation that Defendants' letter promoted their services over those of the Plaintiff is sufficient as to the element of promotion of Defendants' goods and services.

7

## 2. Commercial Advertising or Promotion

Defendants next argue that "[a] letter to one customer is not sufficient to constitute advertising or promotion." They rely upon American Needle and Novelty, Inc. v. Drew Pearson Marketing, Inc., 820 F.Supp. 1072 (N.D. Ill 1993). In that case, American Needle was a manufacturer of licensed headwear upon which sports team logos or insignia were affixed. Because it was not a licensee of the National Basketball Association, American Needle entered into a distributorship agreement with DPMI, which was an NBA licensee. The contract provided American Needle with the right to purchase and distribute NBA licensed products for a period of ten years. Before the expiration of the agreement, however, DPMI sent a letter to American Needle, alleging violations of its contractual obligations and purporting to terminate the agreement. A copy of the letter was sent to officials of the NBA. American Needle filed suit on the theory that DPMI's letter violated §43(a) of the Lanham Act. The court granted DPMI's motion to dismiss. While finding that the Lanham Act does not require allegedly false statements to reach the consuming public before they are actionable, the judge determined that the statute does require "that such statements be made in 'commercial advertising or promotion.'" The court further found that "the term 'commercial,' as used in Section 43(a)(2), refers to the business purpose for which the advertising or promotion is used."

> Nothing in the Lanham act suggests that "advertisement" and "promotion" should be given any interpretation other than their plain and ordinary meanings, which include the notion of public dissemination of information.
>
> \*      \*      \*
>
> The September 17th, letter was an isolated individualized written statement about American Needle's alleged breach of the agreement; that letter is at the opposite pole of clearly

8

> definable media advertising containing specific verifiable or disprovable statements and given wide distribution in commerce. The level of circulation required to constitute advertising and promotion will undeniably vary from industry to industry and from case to case.
>
> *   *   *
>
> American Needle claims that, in the licensed headgear industry, the September 17th, letter achieves a negative effect on American Needle's commercial activities . . . as surely as if DPMI "had gone to a trade show and there said to retailers in attendance the same things about American Needle that it falsely said in the . . . letter." While American Needle's statement may be correct, the difference is that public dissemination of false information to retailers at a trade show would most likely constitute "commercial advertising and promotion," while the single letter privately addressed to a non-consuming licensor does not.

820 F.Supp. at 1078.

Defendants challenge Plaintiff's reliance upon Mobius Management Systems, Inc. v. Fourth Dimensions Software, Inc., 880 F.Supp. 1005, 1026 (S.D. N.Y. 1994). In that case, the court held that a single letter may be a violation of Section 43(a) of the Lanham Act. The Stewart Defendants cite cases critical of the Mobius decision. Those include Medical Graphics Corp. v. SensorMedics Corp., 82 F.Supp. 643, 650 (D. Minn. 1994), in which the court held that a single letter, without any allegation that it was part of a pattern or campaign to penetrate more of the relevant market, is insufficient to meet the requirements of the Lanham Act. Defendants also rely upon Garland Company, Inc. v. Ecology Roof Systems Corp., 895 F.Supp. 274, 279 (D. Kan. 1995) which applied the reasoning of American Needle and rejected the Mobius decision because the single letter in that case did not involve a public dissemination of information and, thus, did not constitute commercial advertising or promotion as defined in the Act.

9

Finally, Defendants express doubt that Mobius would be decided in the same way today as it was in 1994. They rely upon the decision of the U.S. Court of Appeals for the Second Circuit in Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc., 314 F.3d 48 (2nd Cir. 2002). That decision affirmed the grant of partial summary judgment dismissing Lanham Act claims based on statements by employees of the Defendants which allegedly misrepresented the quality of Plaintiff's goods to its customers. The Circuit Court held that the Plaintiff had failed to show that such action constituted "commercial advertising or promotion under the Lanham Act." Id. at 58. The Defendants in the case at bar point out that the trial court in Fashion Boutique is the same court which decided Mobius. They maintain that the Mobius decision resulted from its own egregious facts, and cannot be considered as relevant authority.

ITC responds to Defendants' argument on both factual and legal grounds. First, Plaintiff observes that no allegation in the Complaint is based upon a single letter to one customer. Rather, the Complaint alleges that Defendants' conduct included the April 4, 2007 letter to the Arabian United Float Glass Company and a second, similar letter to the company that provided financing for AUFGC. (Complaint, Paragraphs 27-28). The Complaint further alleges that Defendants issued similar statements to those contained in the AUFGC letter to those responsible for a pending Russian project. (Complaint, Paragraph 29). On that basis, Plaintiff maintains that the conduct in issue in this case is more than a single letter, and that case authority based upon a single communication is not dispositive of its claims in this cause.[1]

---

[1] In a footnote to Plaintiff's Response Brief, ITC observes that Mr. Stewart's verified Answer admits that a second letter was sent to the financing company. The

10

Plaintiff also challenges the applicability of the case law cited by Defendants. ITC cites Circuit Court decisions from the Fifth and Ninth Circuits. In 7-Up Co. v. Coca-Cola Co., 86 F.3d 379 (5th Cir. 1996), the court held that, "for purposes of the Lanham Act's definition of 'commercial advertising or promotion,' both the required level of circulation and the relevant 'consuming' or 'purchasing' public addressed by the dissemination of false information will vary according to the specifics of the industry." 86 F.3d at 1385. The court cited Mobius for the proposition that even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Lanham Act where the potential purchasers in the market are relatively limited in number. Id. at 1386.

In Coastal Abstract Service, Inc. v. First American Title Insurance Co., 173 F.3d 725 (9th Cir. 1999), the Court of Appeals concluded that a district judge was correct in finding that, "[w]here the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the [Lanham] Act." 173 F.3d at 735.[2]

I am persuaded that Plaintiff is correct in both its factual and legal arguments. The defendants in this case have admitted to at least two written communications. Plaintiff alleges that other communications meeting the Lanham Act definition of commercial advertising or promotion have been issued. At least two circuits have reaffirmed the essential proposition of the Mobius decision that a single communication may be sufficient

---

note declares that Plaintiff has asked for production of that document and all similar letters, but that production has not been made. (Plaintiff's Brief, Page 6, n.3).

[2] Both the 7-Up and Coastal Abstract Services cases adopted the Gordon and Breach Science Publishers v. American Institute of Physics criteria for determining whether representations constitute "commercial advertising or promotion."

11

to meet the definition where the relevant market for the goods or services involved is small.

I further conclude that Defendants' reliance upon <u>Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.</u>, is unavailing. My reading of that case indicates that the U.S. Court of Appeals for the Second Circuit did not reject the premise approved in <u>Mobius</u> that a single letter to one purchaser could constitute "advertising or promotion." Rather, the court determined that:

> [a]lthough advertising is generally understood to consist of widespread communication through print or broadcast media, "promotion" may take other forms of publicity used in the relevant industry, such as displays at trade shows and sales presentations to buyers.[3]
>
> \*          \*          \*
>
> The ordinary understanding of both "advertising" and "promotion" connotes activity designed to disseminate information to the public. Thus, the touchstone of whether a defendant's action may be considered "commercial advertising or promotion" under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market.

314 F.3d at 57. Plaintiff in the case at bar asserts that the relevant market for services to design float glass facilities is four to six customers who are in the process of bidding out independent float glass facilities in a given year. (Declaration of Dean Wiley, Exhibit B to Plaintiff's Response Brief, Paragraph 6). Defendants maintain that the market in a given year is twenty to twenty-five customers. If the evidence supports Plaintiff's assertion, I am persuaded that the communications alleged in the Complaint will satisfy the Lanham Act definition of "commercial advertising or promotion." Even if the world-wide market is as

---

[3] The court cited <u>7-Up v. Coca-Cola</u> for this declaration.

large as Defendants suggest, a single engagement for the construction of a float glass facility would, in my view, represent a significant penetration of the relevant market.

### 3. Actual Deception

Defendants' final argument is that a showing (and, thus, a pleading) of actual deception is required to state a cause of action under §43(a) of the Lanham Act. Defendants maintain that the Verified Complaint in this case "does not allege actual deception on the part of one or two recipients of Defendants' letter of April 4, 2007." They point out that, while the Plaintiff alleges a contract with AUFGC, it "does not allege that the contract has been terminated . . .." They assert that the lack of such an allegation requires the conclusion that their letter did not result in the deception of AUFGC, and Plaintiff's Lanham Act claim must fail.

Defendants rely upon American Counsel of Certified Pediatric Physicians and Surgeons v. American Pediatric Surgery, Inc., 185 F.3d 606 (6th Cir. 1999) for the proposition that a complaint must allege actual deception in order to make out a Lanham Act claim. Plaintiff responds by citing the following passage from that decision:

> To state a cause of action for misleading advertisement under the Lanham Act, a plaintiff must establish the following: 1) the defendant has made false or misleading statements of fact concerning his own product or anothers; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the advertisements were introduced into interstate commerce; and 5) there is some causal link between the challenged statements and the harm to the plaintiff.

185 F.3d at 613. The district court had ruled in that case that all of the plaintiff's claims were based on statements that were either ambiguous or literally true, yet misleading, and

that the plaintiff had failed to introduce sufficient evidence of actual deception. In affirming the district court, the Sixth Circuit observed that actual deception must be proven to establish a claim based upon ambiguous or literally true but deceptive statements. The court also recognized, however, "the general rule that in cases of literally false statements, evidence of actual deception is not required. 185 F.3d at 617-18 (citing Getty Petroleum Corp. v. Island Transportation Corp., 878 F.2d 650, 656-57 (2nd Cir. 1989) and Federal Trade Comm'n v. Brown and Williamson Tobacco Corp., 778 F.2d 35, 40-42 (D.C. Cir. 1985). Additionally, the court held that the standard for obtaining injunctive relief under the Lanham Act was more lenient, and that such relief may be obtained "by showing only that the defendant's representation about its product have a tendency to deceive consumers . . . ." Id. at 618 (quoting Max Daetwyler Corp. v. Input Graphics, Inc., 608 F.Supp. 1549, 1551 (E.D. PA 1985)).

The Verified Complaint in the case at bar alleges that "[a]ny assertion, express or implied, of Defendants Leslie Stewart and Stewart Engineers that either has ownership of the float technology provided by ITC for use in the float glass manufacturing facility in Yanbu, Saudi Arabia, is objectively verifiably false." The Complaint also alleges that the April 4, 2007 letter contains false or misleading descriptions of fact, or false or misleading representations of fact which were intended to deceive AUFGC as to the ownership of the float technology provided by ITC. (Complaint, Paragraphs 35-38). Plaintiff further alleges that it has been harmed by the letter in that, *inter alia*, ITC was required to undertake additional obligations in its performance under the contract with AUFGC. (Complaint, Paragraph 39). In Balance Dynamics Corporation v. Schmitt Industries, 204 F.3d 683 (6th Cir. 2000), our circuit reaffirmed the holding of Pediatric Physicians, and held further that

14

a showing of actual confusion [deception] is not a prerequisite to recovery of "damage control expenses" even though such an award is monetary in nature. "Damage control expenses must be treated differently from marketplace damages because, like an injunction, damage control is undertaken precisely to prevent such things as lost sales, lost profits, and lost good will." 204 F.3d at 691.

Plaintiff has alleged actual falsehood in Defendants' representations to its client. Accepting that allegation as true for purposes of this Motion, I conclude that the Complaint is sufficient to state a claim for such marketplace damages as it can prove. In addition, Plaintiff seeks injunctive relief and the recovery of damage control expenses. Such remedies are available upon a lesser showing of a tendency to deceive. Thus, I am satisfied that Defendants' argument with respect to actual deception is insufficient, and that the Motion to Dismiss must be denied as to that issue.

In their Reply Brief, Defendants observe that §43(a) of the Lanham Act "requires that the false or misleading representation of fact 'is likely . . . to deceive . . ..'" (Reply Brief, Page 3 (citing 15 U.S.C. §1125(a))). They contend that ITC has failed to plead such an allegation. Defendants argue that a fair reading of their April 4, 2007 letter does not reflect the purpose of influencing AUFGC to avail itself of their goods or services. For the reasons stated in Section 1, above, I find those arguments unpersuasive. Plaintiff has alleged actual falsehood as to any assertion, express or implied, that Defendants own the float technology in question. They further allege that the April 4, 2007 letter contains false or misleading descriptions of fact, or false or misleading representations of fact regarding the nature, characteristics and other qualities of the commercial services rendered by Plaintiff in connection with the Yanbu facility. Plaintiff alleges that the Defendants' descriptions and

representations were intended to deceive AUFGC as to those matters, and that Plaintiff, by reason of Defendants misrepresentations, was required to undertake additional obligations in its performance under the contract. Those allegations signify that the Defendants' conduct had an effect upon AUFGC. I am satisfied that the Complaint raises Plaintiff's claim for relief under §43(a) above the level of speculation. That is all that is required to withstand a Rule 12(b)(6) motion to dismiss. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007).

Defendants suggest that their denial of the allegations in the Complaint is sufficient to undermine its adequacy under Fed.R.Civ.P. 12(b)(6). For purpose of a motion under that rule, however, this court must assume that the allegations are true, despite such denials. Twombly, 127 S.Ct. at 1964-65.

Defendants insist that Plaintiff has "not shown in its Verified Complaint, and cannot prove, that the contents of the . . . letter are literally false." Once again, for purpose of a Rule 12(b)(6) motion, the allegations in the Complaint are presumed to be true. Issues of proof may come into play at the summary judgment stage, or at trial. The current motion tests only the adequacy of the pleading, and I am satisfied that it meets the standard established by the Supreme Court in Twombly.

Finally, Defendants argue that Plaintiff "must show that AUFGC cancelled its contract with ITC." No authority is cited in support of that argument. ITC has alleged that it suffered a detriment as a direct result of Plaintiff's improper actions. Accepting those allegations as true for purposes of the within motion, I am satisfied that Plaintiff has stated a claim upon which relief can be granted if the allegations in the Verified Complaint can be supported by competent evidence.

Accordingly, I recommend that the Motion to Dismiss Count I of the Complaint be denied.

### 4. State Law Claims

Defendants move to dismiss the state law claims in Counts II through V of the Complaint on the theory that they "cannot survive a motion to dismiss for lack of relationship to the federal claim [Count I] under 28 U.S.C. §1367(a)." I disagree. 28 U.S.C. §1367 provides, in pertinent part, as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they may form a part of the same case or controversy under Article III of the United States Constitution.
>
> \* \* \*
>
> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if -
>
> \* \* \*
>
> (3) The district court has dismissed all claims over which it has original jurisdiction . . ..

28 U.S.C. §1367(a). The statute provides that in any case of which a United States District Court has original jurisdiction, it has supplemental jurisdiction over all other claims that are so related to the federal claim that "they form part of the same case or controversy under Article III of the United States Constitution." Count I of this Complaint invokes the court's federal question jurisdiction under 28 U.S.C. §1338(a) by accusing Defendants of violating the Lanham Act. Plaintiff's state law claims are based upon the same conduct on the part

of Defendants which gives rise to the Lanham Act claim in Count I.  The Supreme Court's decision in United States Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) eliminates any doubt that Plaintiff's state law claims are well within the scope of judicial power conferred in 28 U.S.C. §1367(a).

> The state and federal claims must derive from a common nucleus of operative fact.  But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would normally be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in the federal courts to hear the whole.

383 U.S. at 725.  (Emphasis in original).  Because I find that Plaintiff's Count I federal claim is sufficient to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(6), and because the state and federal claims derive from a common nucleus of operative fact, I recommend that the court exercise its jurisdiction over the state law claims so that the entirety of the dispute between the parties can be resolved in a single action.

For all of the above reasons, I recommend that Defendants' Motion to Dismiss Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction or for Removal to State Court be denied as to Counts II through V.

### III.    **NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. Section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections that raise some issues

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Federation of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Donald A. Scheer<br>
DONALD A. SCHEER<br>
UNITED STATES MAGISTRATE JUDGE

DATED: March 12, 2008

---

### CERTIFICATE OF SERVICE

I hereby certify on March 12, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on March 12, 2008. **None.**

s/Michael E. Lang  
Deputy Clerk to  
Magistrate Judge Donald A. Scheer  
(313) 234-5217