UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL TECHNOLOGIES
CONSULTANTS, INC.,

                    Plaintiff/Counter-Defendant,

v.                                          Case No. 07-13391
                                          Honorable Julian Abele Cook, Jr.

LESLIE T. STEWART

                    Defendant,

and

STEWART ENGINEERS & ASSOCIATES, INC.,

                    Defendant/Counter-Plaintiff
                    and Third-Party Plaintiff.

v.

DEAN WILEY,

                    Third-Party Defendant.

<u>ORDER</u>

      In this case, the Plaintiff, International Technologies Consultants, Inc., complains that the

Defendants, Leslie T. Stewart and Stewart Engineers & Associates, Inc. (collectively, "Stewart

Engineers") wrongfully and without justification disseminated damaging correspondence about the

quality of its work product in Saratov, Russia (the "Saratov Project") and – separately – to the

Arabian United Float Glass Company ("AUFGC"), which caused it to suffer damages and injuries

to its reputation within the business communities. The Plaintiff further alleges that these improper

communications were distributed to entities with whom it was doing business. In an effort to

protect its business interests, the Plaintiff filed this lawsuit in which it accused Stewart Engineers

1

of (1) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), (2) unfair competition in violation of the Michigan common law, (3) intentional interference with contract relations, (4) libel, and (5) interference with a business relationship.

Stewart Engineers responded to these charges with a written denial and the filing of a counter-complaint in which it alleged that the Plaintiff, *inter alia*, had unlawfully and unethically disclosed certain information which had been considered by the parties to be confidential trade secrets. Believing that these secrets had been disclosed to the Plaintiff in connection with a March 7, 1990 business transaction in Europe (the "Euroglas Project") and an August 22, 1990 arrangement in Indonesia, ("the Muliaglas Project"), Stewart Engineers asserted counter causes of action for (1) breach of contract in violation of a 1989 Confidentiality Agreement, (2) interference with an existing business relationship, and (3) violations of the Michigan Uniform Trade Secrets Act ("MUTSA"), Mich. Comp. Laws § 445.1901 et seq.

In an order of September 22, 2010, the Court (1) denied a request by Stewart Engineers for the entry of a summary judgment relating to certain aspects of the complaint, and (2) granted a motion for a summary judgment by the Plaintiff which addressed all elements of the counter-complaint.

Several motions followed. First, Stewart Engineers filed a motion in which it urged the Court to reconsider its September 22nd order. In addition, it also filed a request for the Court to (1) admit certain exhibits during a trial, and (2) dismiss the complaint for lack of subject matter jurisdiction. In a separate motion, the Plaintiff asked the Court to, *inter alia,* strike its demand for a jury trial. The Court will now consider each motion *seriatim*.

I.

2

As to its request for a reconsideration of the September 22nd order, Stewart Engineers correctly notes that the Local Rules for the Eastern District of Michigan require an aggrieved party, who seeks to obtain the reconsideration of an order, to establish the existence of "a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled."   E.D. Mich. L.R. 7.1(h)(3).   A "palpable defect" is one which is obvious, clear, unmistakable, manifest, or plain.   *Smith ex rel. Smith v. Mount Pleasant Public Schools*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003).   The moving party must demonstrate that the suggested correction of  the defect "will result in a different disposition of the case."   *Id.*   This Local Rule also provides that "motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication" will not be granted. *Id.*

A.

The dispute in this lawsuit depends, in part, on the validity of a Confidentiality Agreement that was executed by the parties more than twenty years ago on June 5, 1989.  At the time of the execution of this Confidentiality Agreement, the parties agreed that it was designed to protect "certain confidential information" from disclosure as a part of their business dealings.  It was also undisputed that this document made reference to an "attached list" of information which presumably would have described the confidential information in more detail, but was never attached to the Confidentiality Agreement. In its order of September 22, 2010, the Court found that (1) inasmuch as there must be a meeting of the minds on all material terms before a contract will be deemed to be valid and enforceable, and (2) the parties omitted one of the most essential terms within the contract (i.e., the list of the protected trade secrets), there could be no triable issue as to whether the contract failed for indefiniteness.

3

Stewart Engineers disagrees with this assessment, arguing that (1) the now contested judicial directive by the Court was incorrectly based, in part, on *Brodsky v. Allen Hayosh Inds.,* 1 Mich. App. 591 (1965) which it believes is "readily distinguishable," (2) the parties were not contractually required to identify the specific nature of the confidential information covered by the Confidentiality Agreement, (3) the information within the Confidentiality Agreement was disclosed, to some extent, and (4) the parties' interpretation of the contract language presented either an issue of fact or an ambiguity, subject to interpretation by reference to extrinsic evidence.

In interpreting unambiguous contractual language or making a determination as to whether such language is ambiguous at all, the Court is presented with a question of law which it must initially address and resolve. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 463 (2003). It is only when the language within a contract is unclear or readily susceptible to more than one interpretation that a document becomes ambiguous and presents an issue for resolution by the trier of fact, with resort to extrinsic evidence. *Id.* at 463. Furthermore, the Court emphasizes that a fundamental tenet of all contracts is the existence of mutual assent or a meeting of the minds on all of the essential terms. *Burkhardt v. Bailey,* 260 Mich. App. 636, 655 (2004). The presence or absence of a meeting of the minds is to be evaluated under an objective standard by "looking to the express words of the parties and their visible acts, not their subjective states of minds." *Heritage Broadcasting Co. v. Wilson Communications, Inc.*, 170 Mich. App. 812, 818 (1988).

Stewart Engineers challenges the reliance by the Court on *Brodsky.* In making reference to the case at hand, the Court indicated that it "merely echoed the familiar principle that there must be a meeting of the minds on all material terms before a contract will be deemed to be valid and enforceable." Thus, the Court rejects the assertion by Stewart Engineers that *Brodsky* is readily

4

distinguishable from the instant case. (Order at 11). Although Stewart Engineers does not appear to have disputed the wisdom of the standard in *Brodsky,* it nonetheless urges the Court to look to the reasoning in *Opdyke Inv. Co. v. Norris Grain Co.*, which held that "whether the parties intend to be bound only by a formally written and executed final document is a question of fact," and that in most cases it is a question properly left to the jury and not appropriate for resolution by way of a summary judgment. 413 Mich. 354, 359-60 (1982) (observing Professor Corbin's admonition that "[w]e must not jump too readily to the conclusion that a contract has not been made from the fact of apparent incompleteness . . . . [because]. . . . [i]t is a mere matter of interpretation of their expressions to each other, a question of fact."). Based on *Opdyke, supra*, and a related line of cases, all of which suggest that Michigan courts do not favor the destruction of contracts because its terms are indefinite, Stewart Engineers believes that the interpretation of the Confidentiality Agreement by the Court is unwarranted, and, at the very least, there is a legitimate question of fact as to whether the parties had an enforceable agreement.

Upon reconsideration of its order, the Court agrees and will grant Stewart Engineers' request for a reconsideration of its decision to grant a summary judgment as it relates to the breach of contract issue.

The Court now believes that - to the extent that construing the Confidentiality Agreement requires an inquiry into the parties' intent, the rationale behind *Opdyke* permits the Court to look beyond the four corners of the contract and undertake a factual inquiry of "all the relevant evidence," particularly if uncertainty in the contract terms can be removed by subsequent acts or agreements of the parties. *Opdyke* at 839; *Band v. Hazel Park Dev. Co.*, 337 Mich. 626, 628 (1953). The missing terms from the Confidentiality Agreement may be considered as evidence by

5

a jury that the parties did not have any meeting of the minds on the most essential terms of their contract; namely, the identification of the protected trade secrets. Nevertheless, there is also sufficient evidence to reasonably suggest that the parties intended to (1) identify a certain set of trade secrets contemporaneously or in the future, and (2) be bound by the Confidentiality Agreement regarding yet-undisclosed information. Evidence of this competing view includes the parties' conduct in (1) specifically reaffirming the Confidentiality Agreement as a part of the Muliaglas Project contract,[1] (2) making a notation that the Muliaglas Project was one of the items to be added to the "attached list," and (3) the Plaintiff's apparent effort to establish its ownership over the trade secrets as a means of avoiding liability for a violation of the Confidentiality Agreement. Inasmuch as a meeting of the minds can be found from the "performance and acquiescence in that performance," *Sanchez v. Eagle Alloy Inc*., 254 Mich. App. 651, 665-666 (2003), the interpretation of such conflicting evidence is most appropriately resolved by a jury. *Opdyke* at 361. Accordingly, the Court grants the motion by Stewart Engineers to reconsider its decision to grant a summary judgment in favor of the Plaintiff as it relates to the pending breach of contract claim.[2]

---

[1]As indicated in the September 22nd order, the contract between the parties relating to the Muliaglas Project agreement contained the following clause: "[t]he parties have heretofor executed an agreement entitled Confidentiality Agreement Between Firms which was signed by the parties on June 5,1989 and is attached hereto as Exhibit A. The parties agree and wish to reaffirm that the terms and conditions of that agreement are still valid and remain in force throughout the duration of this agreement."

[2] The Plaintiff correctly claims that Wiley is chargeable with knowledge of the contents of the document signed by him, even if he did so as a representative of his Company and not in his personal capacity. In this regard, the Court may have misunderstood the extent of the Plaintiff's reliance on *Hosner v. Brown*, 40 Mich. App. 515 (1972), inasmuch as it did not pursue liability against Wiley under a "piercing the corporate veil" theory. In light of his signature on the Confidentiality Agreement, and the parties' subsequent course of dealings, the

In anticipation of the argument that an entry of a summary judgment was appropriate on the alternate ground that Stewart Engineers' breach of contract claim is time-barred, the Court rejects this position in light of settled Michigan law that the six-year period of limitation on a breach of contract action accrues "when the promisor fails to perform under the contract." *H.J. Tucker and Associates, Inc. v. Allied Chucker and Engineering Co.,* 234 Mich. App. 550, 562 (Mich. App. 1999). Here, where Stewart Engineers alleges separate breaches of the Confidentiality Agreement which if true, occurred in 2006 and 2007, the Court is satisfied that the Plaintiff has not proven these claims to be time-barred as a matter of law.

B.

Another central source of conflict between the parties stems from the counter-claims by Stewart Engineers that the Plaintiff and Dean Wiley interfered with its business relationships or expectancies in competing for business on two different projects. To prove this claim, Stewart Engineers would have to establish, among other things, that the Plaintiff and Wiley used wrongful means when it engaged in what may be perceived to be permissible competition. In its September 22nd order, the Court held that - based on the evidence presented - no reasonable jury would find that the Plaintiff or Wiley competed unfairly with Stewart Engineers by using its trade secrets and "definitively lying" to its prospective business partners about their respective roles in creating certain engineering designs.

However, Stewart Engineers' now-revived breach of contract claim, if proven, could

---

question of whether his knowledge of its contents suggests an intent for him to be *personally* bound by it is best resolved by a jury. *See, e.g., Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 316 (6th Cir. 1998) ("under Michigan law, the terms of a contract may personally bind an agent even where the agent's principal is disclosed and known to be the beneficiary of a contract.").

persuade a jury that the Plaintiff unfairly competed in its business endeavors by relying on information obtained in violation of the Confidentiality Agreement. When coupled with the apparent inconsistency between Wiley's deposition testimony and the representations to his business prospects that he had personally prepared certain design work, this evidence gives rise to a genuine issue of a material fact as to whether the Plaintiff engaged in wrongful acts. Thus, the Court agrees that, as to its decision regarding Stewart Engineers' claims for interference with a business relationship or expectancy (Counts III, IV, V, and VI), a reconsideration of the September 22nd order is warranted.

Similarly, inasmuch as the parties have not presented a good and sufficient argument as it pertains to the causation aspect of the Plaintiff's claims, this element will not be resolved through a summary judgment route. Rather, this is an issue which must be presented to a jury.

C.

Stewart Engineers also suggests that the Court committed a palpable error by entering a summary judgment in favor of the Plaintiff which pertained to an alleged misuse of its trade secrets (Counts VII and VIII). There was a sharp dispute between the parties as to whether title to some of the alleged trade secrets passed to the Plaintiff by virtue of its payments on the Euroglas Project. In its September 22nd order, the Court found that - after analyzing the language of the Euroglas Project agreement - there was no genuine issue of a material fact as to whether the Plaintiff had satisfied its fiscal obligations in a manner that "triggered a transfer of title from Stewart Engineers to the [Plaintiff] on all work covered by those payments." (Order at 22-23).

Stewart Engineers urges the Court to reconsider these findings inasmuch that - in its opinion - there is sufficient evidence from which a jury could reasonably conclude that (1) the Plaintiff did

8

not fully meet its payment obligations on the Muliaglas Project, and (2) it never received title on any of the drawings and/or trade secrets that had been prepared in conjunction with that effort. To support this argument, Stewart Engineers relies in part on a declaration that was prepared by Leslie Stewart *after* the Court had issued its now-challenged order which explains, in part, that (1) it finished approximately 70 drawings in connection with the Euroglas Project deal, none of which were sufficient to complete an operational float bath furnace, (2) it completed over 300 drawings on the Muliaglas Project which were sufficient for the construction of a float bath facility, and (3) it never signed a document that assigned its interest in the Muliaglas Project drawings to the Plaintiff. Furthermore, and despite having obtained a statement from Stewart Engineers that the Plaintiff's outstanding indebtedness of $1,727,649.80 on the Muliaglas Project could be extinguished with a payment of $600,000, there is nothing in the record to indicate that any monies or any portion thereunder were ever proffered toward this proposal. (Recons. Mot. at DX 1).

However, in its opposition pleadings to the Plaintiff's request for dispositive relief on this issue, Stewart Engineers submitted a limited argument and did not made any effort to (1) develop its response as to why title never passed on the Muliaglas Project drawings, and (2) make it clear that the record bore out a distinction between the 70 or so drawings on the Euroglas Project and the 300 drawings that had been prepared for the Muliaglas Project deal. This is likely, in part, due to the Plaintiff's argument which focused almost exclusively on the ownership of the trade secrets under the Euroglas Project. Thus, in light of the arguments by the parties, the September 22nd order resolved the precise issue that had been properly placed before it; namely, whether Stewart Engineers' trade secrets had been assigned to it as a part of the Euroglas Project agreement; the Court made no ruling as to the status of any trade secrets exchanged under the Muliaglas Project

9

agreement. The resultant finding was tethered to the Plaintiff's argument, as reflected by the notations from the Court that "(u)nder the terms of the EuroGlas agreement, these payments would have triggered a transfer of title from Stewart Engineers to the [the Plaintiff] *on all work covered by those payments*, . . . ." and that a summary judgment would be issued in favor of [the Plaintiff] on "this" issue.  (Order at 22-23) (emphasis added).

It bears noting that a party may not utilize a motion for reconsideration as a procedural vehicle for (1) revealing its new legal theories for the first time, (2) raising legal arguments which could have been made during the pendency of the previous motion, or (3) presenting evidence that could have been adduced during the pendency of the original motion." *DiPonio Const. Co., Inc. v. International Union of Bricklayers et al,* 739 F. Supp. 2d 986, 1004 (E.D. Mich. 2010). Stewart Engineers' argument, to a large extent, raises an issue that it had an opportunity to argue fully, but simply chose not to do so.  Inasmuch as Stewart Engineers has not shown that there was an "obvious, clear, unmistakable, manifest or plain" error in the analysis by the Court on this issue, the request by the movant to reconsider that aspect of its September 22nd ruling must be denied.

D.

Finally, Stewart Engineers takes issue with the decision by the Court to deny its request for a summary judgment on the Plaintiff's contention that its business interests had been subjected to an unwarranted interference as it relates to the Saratov Project.  In the challenged order, the Court determined that a summary resolution of this issue was inappropriate inasmuch as it concluded that a genuine issue of a material fact existed as it related to questions of whether Stewart Engineers used or attempted to use the allegedly malicious correspondence to interface with the Saratov Project decision makers about the quality of the Plaintiff's business acumen.  In its request for

10

reconsideration, however, Stewart Engineers has now characterized this issue as "irrelevant."[3] (Reconsid. Mot. at 17).  Instead it points to other evidence that it believes should have compelled a grant of relief in its favor, including its allegation that (1) in its judgment, the letter contained no material misrepresentations, (2) the Plaintiff never contracted or intended to contract with the Saratov Project directly, (3) the entity with whom the Plaintiff had such an expectancy (i.e., Pony Technologies) never received the allegedly harmful letter, (4) no damages which were caused to the contractual relationship between the Plaintiff and Pony Technologies, and (5) Stewart Engineers was merely engaged in healthy fair competition.

The Court disagrees with this assessment, especially since the proffered information would not change the outcome of its analysis. The Court is not persuaded that a decision by a jury would necessarily resolve all of the foregoing evidence in Stewart Engineers' favor.  Hence, a reconsideration on this issue is unwarranted and a rejection by the Court of this request by Stewart Engineers for a summary judgment on its counterclaims will stand.

E.

Finally, the Court agrees with Stewart Engineers' assertion that the September 22, 2010 order adopted a statement of facts from an earlier order which – although disclosed – retained two footnotes (namely, numbers five and seven) which required a modification in light of its production of evidence to support certain of its previously-unsubstantiated claims.  In this regard, footnote five will be deleted in its entirety. As to the last sentence of footnote seven, the Court deletes the notation "without providing any evidence for their assertion" from the text. (Order at 3, 7).  Thus,

---

[3]Notwithstanding this current characterization, the Court notes that the parties devoted a significant portion of their original pleadings in debating this particular issue.

11

the Court will grant Stewart Engineers' request for reconsideration and strike these two above-referenced footnotes from its September 22, 2010 order.

## II.

As noted above, the Plaintiff has filed a separate request to have the remaining claims in this lawsuit resolved by the Court during a bench trial. When it commenced the lawsuit on August 14, 2007, the Plaintiff made a demand for this case to be tried by a jury. When Stewart Engineers filed its counterclaims a few months later, it did not make a separate jury demand and relied upon the Plaintiff's demand for a jury trial.

In its current motion, the Plaintiff also waived its right to any legal remedies that it would have been allowed to pursue based on the claims within the complaint. In its opinion, such a move means that only equitable remedies remain, eviscerating either party's right to demand a jury. *See generally, Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 659 (6th Cir. 1996) (under standards of Seventh Amendment, right to jury trial exists only in lawsuits "in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.") (emphasis in original). Thus, if a case only involved a determination of equitable rights, then there would be no right to a jury trial that is recognized under the Seventh Amendment. *Provident Life & Acc. Ins. Co. v. Adie,* 982 F. Supp. 1269, 1270 (E.D. Mich. 1997). In support of its position on this issue, the Plaintiff cites Fed. R. Civ. P. 39(a) which provides in pertinent part:

> When jury trial has been demanded under Rule 38, the action must be designated on the docket as a jury action. The trial on all issues so demanded must be by jury unless:
>
> (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or

(2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial.

Fed R. Civ. P. 39(a).

Acknowledging that Stewart Engineers has refused to stipulate to the requested relief, the Plaintiff asks the Court to proceed under the authority of Rule 39(a)(2) and determine, as a matter of law, that there is no federal right to a jury trial. Stewart Engineers opposes the motion, contending that, having relied upon the Plaintiff's jury demand, it does not wish to relinquish that right.

In addition to Rule 39, a consideration of Fed. R. Civ. P. 38 by the Court is also relevant to this motion because it emphasizes that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution - or as provided by a federal statute – is preserved to the parties inviolate." Fed. R. Civ. P. 38(a). Furthermore, subsection (d) of this Rule allows a proper jury demand to be withdrawn "only if the parties consent." Fed. R. Civ. P. 38(d). The Court of Appeals for the Sixth Circuit has noted that in evaluating a motion under Rule 39(b), a court should exercise its discretion in favor of granting a jury trial "where there are no compelling reasons to the contrary." *Moody v. Pepsi-Cola Metropolitan Bottling Co., Inc.*, 915 F.2d 201, 206 (6th Cir. 1990).

Here, of relevance is that the Court's decision to grant a reconsideration of its September 22nd order revives Stewart Engineers' claim for money damages arising out of an alleged breach of the Confidentiality Agreement. *See Jones v. Metro. Hosp. & Health Ctrs.*, 88 F.R.D. 341, 344 (E.D. Mich.1980) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.") (quoting *Dairy Queen Inc. v. Wood*, 369 U.S. 469 (1961)). Accordingly, assuming Stewart Engineers is entitled to rely on the jury demand filed by the Plaintiff, its right to proceed by way of jury on that claim remains viable. *See*

13

*Transmatic, Inc. v. Gulton Indus., Inc.,* 835 F. Supp. 1026, 1029 (E.D. Mich. 1993) ("When legal and equitable claims are joined in the same action, 'the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'") (quoting *Lytle v. Household Mfg.*, *Inc.*, 494 U.S. 545, 549 (1990)).

The Court believes that Stewart Engineers' right to rely on the jury demand that has been filed by the Plaintiff cannot be seriously disputed. Fed. R. Civ. P. 39(a); *Patterson v. Coughlin,* 905 F.2d 564, 570 (2d Cir. 1990) (where plaintiff had requested jury trial in complaint, [all of the] defendants are entitled to rely on that request to preserve their own right to jury trial); *See also*, 8 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL ¶ 39.11 (3d ed. 1997) ("once one party has made a jury demand, there is no point in requiring other parties to make a jury demand because . . .the first demand remains effective unless removed by stipulation of the parties or by order of the court . . . ; and even the party who made the first demand is not entitled to withdraw it unilaterally . . . ."); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2318 (3d. ed) ("Once a proper demand for a jury has been made, Rule 38(d) establishes that it cannot be withdrawn without the consent of all parties. This is necessary to protect the reliance that other parties may be placing on the demand."). The Court accepts Stewart Engineers' representation that it relied upon the Plaintiff's jury demand. Accordingly, the right to a jury trial cannot now be unilaterally withdrawn by the Plaintiff, and having been presented with no authority which suggests otherwise, its motion to strike the jury demand and have the case resolved at a bench trial must be, and is, denied.

III.

Stewart Engineers has also filed a motion, seeking to obtain a directive that would require

14

the Plaintiff to review certain spreadsheets and approximately 550 pages of supporting documents in support of its claim that title never passed to it for drawings prepared in anticipation of the Muliaglas Project. Once the review has taken place, Stewart Engineers asks the Court to direct the Plaintiff to report its findings to the Court and to opposing counsel. In the alternative, Stewart Engineers asks the Court to make a direct ruling that this evidence is admissible during a trial.

The Court will grant the first of the two requests by Stewart Engineers. In so doing, the Court directs the Plaintiff to (1) review the spreadsheets and supporting documents which have been identified by Stewart Engineers in its motion (Docket Entry No. 92), and (2) report its findings in writing to the Court and the opposing counsel within thirty (30) days of this order.

That notwithstanding, the Court takes a moment here to express its extreme displeasure with Stewart Engineers' strident language that had been utilized by its counsel in this particular pleading regarding his views of the September 22nd order. Ostensibly, the predominant purpose of the motion is not - as Stewart Engineers claims it to be - an attempt to have certain information admitted at trial. Rather, it appears to reflect another effort by Stewart Engineers to challenge the wisdom of the September 22nd order especially when it appears that only three pages of its nineteen-page pleading are directed toward the substance of its argument.

Some of the arguments that were proffered by Stewart Engineers were never adequately outlined in its opposition to the Plaintiff's dispositive motion. Yet, Stewart Engineers strains the limits of civility by continuing to suggest that the Court was in error for directing the bulk of its attention to those matters that *were* adequately presented by the parties.

Finally and more directly to this point, Stewart Engineers is cautioned that, in expressing its objections to the rulings by the Court in the future, it must do so in a manner that is civil,

15

respectful, and observant of the established Civility Principles that were adopted by the Eastern District of Michigan on January 23, 2008.  The counsel for Stewart Engineers is directed to strictly abide by these principles from this day forward. His failure to do so will result in the imposition of appropriate sanctions.

IV.

Finally, Stewart Engineers urges the Court to grant its renewed motion to dismiss based on what it believes to be a lack of subject-matter jurisdiction and an alleged lack of standing by the Plaintiff to bring this lawsuit.  As to the former request, the Court will reject Stewart Engineers' request for dismissal on this basis, inasmuch as the request is untimely.

In so ruling, the Court notes that it has already denied an earlier motion by Stewart Engineers when it sought to obtain a dismissal of the complaint for lack of subject-matter jurisdiction.  (Docket Entry No. 26).  Although Stewart Engineers' current motion raises slightly different arguments than those presented in its renewed request, the Court declined to grant the earlier motion because the challenged complaint had articulated a valid federal claim under the Lanham Act.  *Id.*  The Court recognized that, while cast as a challenge to the subject-matter jurisdiction of the Court, Stewart Engineers' motion should have been characterized as a request for a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Nevertheless, Stewart Engineers now returns to the Court with a renewed motion to dismiss under Fed. R. Civ. P. 12(b)(1).

It is true, as Stewart Engineers notes, that a Rule 12(b)(1) motion can be framed as a facial attack on the complaint or a factual attack on the underlying evidence.  *Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack on the subject-matter

16

jurisdiction of the Court merely questions the sufficiency of the allegations in the complaint, as did Stewart Engineers' initial motion on this point. *Id.* When confronted with such a challenge, the Court must accept the allegations in the complaint as being true. If these allegations establish the existence of a federal claim, then jurisdiction is said to exist. *Id.* By contrast, when presented with a factual attack on the adequacy of the subject-matter jurisdiction issue, a court must weigh the evidence fully in order to determine whether its authority to adjudicate the matter actually does or does not exist. *Id.*

However, this latter principle is subject to an important limitation which appears to have gone unacknowledged by Stewart Engineers; namely, that when an attack on subject-matter jurisdiction implicates an element of the cause of action, district courts are encouraged to "find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claim." *Id.* (citing *Garcia v. Copenhaver, Bell & Assocs.,* 104 F.3d 1256, 1261 (11th Cir. 1997)). This reflects the general rule that a claim cannot be dismissed for lack of subject-matter jurisdiction because of the absence of a federal cause of action. *Gentek* at 330; *See also, Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416 (6th Cir.2006) ("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits.")[4]; *Bell v. Hood,* 327 U.S. 678, 682 (1946) (observing that jurisdiction is not defeated by the possibility that averments might fail to state a cause of action because such omission invites entry of judgment on the merits - not dismissal for want of jurisdiction). The *Moore* court, quoting *Eubanks v. McCotter,* 802 F.2d 790, 793 (5th Cir. 1987),

---

[4] The two questions are deemed intertwined where "the [same] statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Moore* at 444.

17

explained that this rule exists to protect the plaintiff, who in truth is facing a challenge to the validity of his claim and thus can respond under the safeguards of Rule 12(b)(6) or 56(c).   In this regard, the *Moore* court noted that no purpose is served by indirectly arguing the merits in the context of federal jurisdiction, and that "[j]udicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits." *Moore* at 444.

Here, there is no perceptible distinction between Stewart Engineers' so-called factual attack on the subject-matter jurisdiction of the Court and its challenge to the merits of the Plaintiff's claims. To be sure, all of the issues raised by Stewart Engineers' motion involve matters that go directly to the heart of examining whether - based on all of the available evidence in the record to date, the Plaintiff has stated a legally cognizable claim for relief under the Lanham Act. Contrary to Stewart Engineers' argument, this does not constitute a valid jurisdictional attack.

Furthermore, Stewart Engineers has not persuaded the Court that this case satisfies the exception to *Bell, supra*, which finds that jurisdiction is lacking whenever a claim is "immaterial and made solely for the purpose of obtaining jurisdiction," or is otherwise insubstantial or frivolous. *Bell,* 327 U.S. at 682-83.   No such showing has been made here, and the arguments which have been advanced by Stewart Engineers to date provide no basis for a dismissal of the complaint.

Unlike the case with a true jurisdictional challenge, Stewart Engineers' pleading has not assessed whether (1) this federal court is the proper forum for litigating the Plaintiffs' lawsuit, or (2) if it lacks the power and/or authority to decide this case.   Rather, Stewart Engineers offers one interpretation of the Lanham Act which has the effect of suggesting that the Plaintiff is not entitled to relief.   Such an approach raises the perennial challenge to the merits of a claim, and presents no

18

obstacle to the jurisdiction of the Court. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88 (1990) ("district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, . . . .") (quoting *Bell, supra* at 685). Accordingly, inasmuch as Stewart Engineers' claim is not a challenge to the jurisdiction of the Court but is - in reality - a test of the adequacy of the Plaintiffs' substantive claims, the Court will treat it as a motion for dismissal based on a failure to state a claim under Fed. R. Civ. P. 12(b)(6) and/or a motion for the entry of a summary judgment under Fed. R. Civ. P. 56(c). Either request would be untimely, however, given that the deadline for filing dispositive motions has long expired. As such, the request by Stewart Engineers to dismiss the Plaintiff's lawsuit because of lack of subject matter jurisdiction must, be and is, denied.

Nevertheless, the Plaintiff is directed to indicate in writing and otherwise show good cause as to why its claims against Stewart Engineers should not be dismissed for lack of standing under Article III to the United States Constitution, in light of its waiver of any and all legal remedies which it acknowledges only leaves it to pursue equitable relief.[5]

To demonstrate that it has a constitutional standing to pursue a lawsuit, an aggrieved party - such as the Plaintiff - must present allegations which establish that (1) it has suffered an "injury in fact," which is a specific harm that is actual or imminent rather than conjectural or hypothetical, (2) the claimed injury is "fairly traceable to" the alleged misconduct by the adverse party, and (3)

---

[5]Contrary to the suggestion by the Plaintiff in its response to Stewart Engineers' motion to dismiss, a challenge to a party's standing to sue presents a question related to the jurisdiction of the court to hear a case, *Warth v. Sedlin,* 422 U.S. 490, 498 (1975), and such a challenge may be brought at any time in the form of a motion to dismiss. *Fieger v. Terry*, 471 F.3d 637, 643 (6th Cir. 2006).

19

there is a likelihood that the sought-after relief will redress the alleged injury.  *Steel Co., supra* at 102-04 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-560 (1992)).

Here, as the Court has already noted, the Plaintiff filed a pleading in which it has affirmatively waived its right to pursue any legal remedies in this case, including money damages. (Docket Entry No. 88).  A complete reading of the complaint suggests that the Plaintiff has failed to allege any continuing threat of a future injury that could be redressed by the issuance of a permanent injunction.  Rather, it appears that the Plaintiff has based its lawsuit on alleged misconduct by Stewart Engineers that has already occurred (i.e., the issuance of the two letters on the AUFGC and Saratov Projects).  Yet, injunctive relief can only be granted upon a showing of concrete and particularized allegations of a threat of a future injury as the result of the defendant's actions.  *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 970-71 (6th Cir. 2009) (insufficient basis for plaintiff to only demonstrate past injury when pursuing declaratory and injunctive relief) (citing *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996)); *Steel Co., supra* at 109 (since plaintiff alleged "only past infractions . . . and not a continuing violation or the likelihood of a future violation, injunctive relief will not redress its injury.").

Here, it appears that the granting of forward-looking injunctive relief could not make the Plaintiff whole for any alleged wrongs that it may have suffered in the past. Therefore,  the Plaintiff must indicate in writing or otherwise show good cause within ten (10) days from the entry of this order as to why its complaint should not be dismissed for lack of standing under Article III of the United States Constitution.

V.

20

Therefore, the Court directs the Clerk to enter such orders as may be necessary to reflect the rationale and conclusions that have been rendered in the above-entitled cause.


IT IS SO ORDERED.


Date: September 9, 2011                                    s/Julian Abele Cook, Jr.
                                                          JULIAN ABELE COOK, JR.
                                                          U.S. District Court Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 9, 2011


                                                          s/ Kay Doaks
                                                          Case Manager