UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL TECHNOLOGIES
CONSULTANTS, INCORPORATED,

                Plaintiff/Counter-Defendant,

vs.

LESLIE T. STEWART,

         Defendant,

and

STEWART ENGINEERS & ASSOCIATES, INC.,

        Defendant/Counter-Plaintiff/
        Third-Party Plaintiff,

vs.

DEAN WILEY,

        Third-Party Defendant.

_____/

Case No. 07-13391

Julian Abele Cook
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION
MOTION FOR ATTORNEY FEES AND COSTS (Dkt. 117)**

## I.    PROCEDURAL HISTORY

Plaintiff International Technologies Consultants, Inc. filed its complaint on

August 14, 2007, contending that the Defendants Leslie T. Stewart and Stewart

Engineers and Associates, Inc. ("Defendants") have (1) engaged in unfair competition in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(A)(1)(B); (2) participated in common law unfair competition; (3) intentionally interfered with its contractual relations with other companies; (4) purposefully interfered with a business relationship or expectancy; and (5) libeled it within their trade circles. (Dkt. 1). On September 4, 2007, Defendants answered and filed a Counterclaim against Plaintiff and Third Party Complaint against Dean Wiley, alleging (1) breach of contract; (2) interference with a business relationship or expectancy; and (3) violations of Michigan's Uniform Trade Secrets Act. (Dkt. 10, 12).

On March 8, 2012, this case was dismissed. (Dkt. 116). The dismissal was based on a finding of "lack of jurisdiction" for the federal Lanham Act count. The remaining counts, being exclusively state law claims, were dismissed without prejudice because there no longer were any "original jurisdiction" claims remaining. *Id.*

On April 5, 2012, Defendants filed a Post-Judgment Motion to Alter or Amend the Court's March 8, 2012 Order to Include Award of Sanctions, in the Form of Attorney Fees and Costs to Defendants Under the Lanham Act and Pursuant to the Inherent Power of the Court. (Dkt. 117). Plaintiff filed a response on April 23, 2012. (Dkt. 125). On April 24, 2012, the Court construed

Defendants' motion as a Motion for Attorney Fees and referred the motion to the

undersigned for report and recommendation.  (Dkt. 127).  Defendants filed a reply

brief on April 30, 2012.  (Dkt. 130).  Pursuant to notice, a hearing was held before

the undersigned on August 30, 2012.  Following the hearing, the parties submitted

supplemental briefs on whether it is appropriate to conduct an evidentiary hearing

on Defendants' motion.  (Dkt. 150, 151).  This matter is now ready for report and

recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

Defendants' motion for attorney fees be **DENIED**.

## II.    STATEMENT OF FACTS

### A.    Relevant Facts

The essential facts of this case have been carefully summarized in the

Court's prior orders.  Accordingly, the undersigned will recite an abbreviated

statement of facts relevant to the disposition of the current motion for attorney

fees.

Plaintiff complains that Defendants wrongfully and without justification

disseminated damaging correspondence about the quality of its work product in

Saratov, Russia (the "Saratov Project") and to the Arabian United Float Glass

Company ("AUFGC"), which caused it to suffer damages and injuries to its

reputation within the business communities.  (Dkt. 1). Plaintiff filed a complaint

alleging that Defendants (1) engaged in unfair competition in violation of § 43 of
the Lanham Act, 15 U.S.C. § 1125(A)(1)(B); (2) participated in common law
unfair competition; (3) intentionally interfered with its contractual relations with
other companies; (4) purposefully interfered with a business relationship or
expectancy; and (5) libeled it within their trade circles. *Id.* On August 23, 2007,
Plaintiff filed a motion seeking a preliminary injunction that would prevent the
Defendants from engaging in conduct which had allegedly caused Plaintiff to
suffer irreparable damage to its business interests. (Dkt. 5).

Defendants responded to Plaintiff's complaint with a motion to dismiss
under Rule 12(b)(1), a written denial, and the filing of a counterclaim and third-
party complaint and Mr. Wiley. (Dkt. 9, 10, 12). Defendants alleged that Plaintiff
and Mr. Wiley had unlawfully and unethically disclosed certain information which
had been considered by the parties to be confidential trade secrets and asserted
claims against Plaintiff and Mr. Wiley for breach of contract, interference with
business relationship or expectancy and violation of the Michigan Uniform Trade
Secrets Act. (Dkt. 12). Defendants' motion to dismiss was denied on March 31,
2008. (Dkt. 26).

On September 20, 2007, the Court entered an order directing defendants "to
refrain from communicating, or attempting to communicate–directly or
indirectly–with any non-parties whom they know, or have reason to know, have or

4

may have an actual or prospective business relationship with Plaintiff relating to

matters which pertain to the float glass technology." (Dkt. 18).  The Court held a

hearing on Plaintiff's motion for preliminary injunction on August 18, 2008, and

on September 23, 2008, the Court entered a preliminarily injunction enjoining "the

Defendants from communicating with any non-parties to this litigation who have,

or may have, an actual or prospective business relationship with the plaintiff

regarding the ownership of the float glass technology during the pendency of this

case." (Dkt. 38).  The Court stated that it believed that Plaintiff had shown that it

is likely to prevail on the merits of its Lanham Act count and its three state law

claims. *Id.*

On October 30, 2009, Defendants moved for partial summary judgment on

Plaintiff's claims, specifically with respect to Plaintiff's claims relating to the

Saratov Project (Dkt. 57), and Plaintiff and Mr. Wiley moved for summary

judgment on Defendants' claims.  (Dkt 58).  On September 22, 2010, the Court

entered an order (1) denying Defendants' motion for partial summary judgment in

its entirety and (2) granting Plaintiff's motion for summary judgment in its

entirety.  (Dkt. 80).

Several motions followed, including Defendants' motion for reconsideration

of the Court's September 22, 2010 order, and Plaintiff's motion in which it waived

all claims to legal remedies arising from the claims of its complaint.  On

September 9, 2011, the Court entered an order granting Defendants' motion for reconsideration in part, as to Defendants' breach of contract and interference with a business relationship or expectancy counts, but reaffirming the grant of summary judgment on Defendants' trade secrets claim. (Dkt. 106). The Court also directed Plaintiff to show cause why its claims against Defendants should not be dismissed for lack of standing under Article III of the United States Constitution, in light of Plaintiff's waiver of any and all legal remedies. *Id.*

On March 8, 2012, the Court entered an order in which it dismissed Plaintiff's Lanham Act claim for lack of jurisdiction. (Dkt. 116). The Court concluded that Plaintiff had waived all legal remedies, leaving only an equitable claim for permanent injunction, and that Plaintiff "has failed to allege any continuing threat of future injury that could be redressed by the issuance of a permanent injunction. Rather, the complaint alleges past injuries sustained by the mailing of letters by the Defendants in 2007." *Id.* The Court declined to exercise supplemental jurisdiction over the remaining pending state law claim and thus dismissed those claims without prejudice. *Id.*

On April 5, 2012, Defendants filed this Motion for Attorney Fees. (Dkt. 117).

### B.    The Parties' Arguments

#### 1.    <u>Defendants' Arguments</u>

Defendants seek an award of attorneys fees and costs pursuant to the Lanham Act and the Court's inherent powers. Defendants argue that they are the "prevailing party" in this litigation because the Court dismissed Plaintiff's Lanham Act claim, dismissed all remaining state law claims without prejudice, and dissolved the preliminary injunction that had been granted to Plaintiff. Defendants further argue that this case is "exceptional," as required for an award of attorney fees under the Lanham Act, because they allege that third-party defendant Dean Wiley made false or inconsistent sworn statements that he personally prepared certain drawings and that Plaintiff paid for the drawings in question. Defendants argue that these same facts demonstrate that Plaintiff acted in bad faith in this litigation and that this bad faith "goes straight to the heart of the justice system," thus justifying an award of attorney fees under the inherent powers of the Court. (Dkt. 117).

### 2. **Plaintiff's Response**

Plaintiff responds that Defendants are not entitled to attorney fees in this case because Defendants are not the "prevailing party" in this litigation. In fact, Plaintiff argues that it is the prevailing party because it achieved its purpose in filing this litigation–a preliminary injunction which protected it during the two float glass projects at issue–and the Court granted it summary judgment on the trade secret counts asserted against Plaintiff. Plaintiff also argues that even if the

7

Defendants could be deemed the "prevailing party," Defendants are nevertheless not entitled to attorney fees because this is not an "exceptional" case under the Lanham Act.  Finally, Plaintiff argues that Defendants have failed to show that Plaintiff acted in bad faith sufficient for an award of sanctions in the form of attorney fees under the Court's inherent powers

## III.   ANALYSIS AND CONCLUSIONS

### A.   Motion for Fees Under the Lanham Act

#### 1.   <u>Legal Standard</u>

Although the rule in American civil litigation is that litigants generally have to bear their own legal costs, Congress has authorized the award of attorney's fees to prevailing parties in numerous statutes, including the one at issue here.  The relevant portion of the Lanham Act at issue in this motion reads as follows: "The court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  Thus, the Lanham Act § 1117(a) yields two inquiries: (1) whether the requesting party was the "prevailing party," and (2) whether the case was "exceptional."  *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006).

##### a.   *Prevailing party*

The Supreme Court has stated that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a

manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (construing the term as used in 42 U.S.C. § 1988).[1]  The Sixth Circuit has explained that "[t]o be a prevailing party, a party must receive at least some relief on the merits of [its] claim such as a judgment, an injunction, or a consent decree." *Associated General Contractors of Tenn., Inc. v. County of Shelby*, 5 Fed. Appx. 374, 377 (6th Cir. 2001) (quoting *Horner v. Ky. High Sch. Athletic Ass'n*, 206 F.3d 685, 697-98 (6th Cir. 2000)).  The litigant need not prevail on all claims; rather, he need only "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quotation marks omitted).

### b.    *Exceptional case*

The Lanham Act does not define "exceptional."  However, the Sixth Circuit has held that "an 'exceptional' case is one where a defendant engaged in trade practices that were 'malicious, fraudulent, willful or deliberate,' . . . or where a plaintiff brings a suit that could fairly be described as 'oppressive.'"  *See Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 2000 WL 226959, at *1 (6th Cir. 2000)

---

[1] The Supreme Court has explained that the term "prevailing party" as contained in various fee-shifting statutes must be construed as having a consistent meaning in all federal statutes.  *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602-03 (2001).

9

(citations omitted).  The Sixth Circuit has indicated that the "oppressive" standard

applicable to prevailing defendants requires "an objective inquiry into whether the

suit was unfounded when it was brought and a subjective inquiry into the

plaintiff's conduct during litigation." *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d

724, 728-29 (6th Cir. 2004) (citations omitted).  "Awarding attorney's fees to a

prevailing defendant is meant to 'provide protection against *unfounded* suits

brought by trademark owners for *harassment* and the like.  *Id.* at 729 (quoting S.

Rep. No. 93-1400 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7136 (emphasis

added)).

2.   **Legal Analysis**[2]

a.   ***Whether Defendants are the "prevailing party" in this***

---

[2] As a preliminary matter, the undersigned finds that an evidentiary hearing is not necessary on Defendants' motion.  The decision to hold an evidentiary hearing on attorneys' fees is entrusted to the court's discretion, and the Sixth Circuit has held that "[a] hearing is required only where the district court cannot fairly decide disputed questions of fact on the basis of affidavits and other documentation." *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995).  However, as the Supreme Court has determined, a "request for attorney's fees should not result in a second major litigation." *Buckhannon*, 532 U.S. at 609 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  As discussed below, the parties have made the same arguments regarding Mr. Wiley's alleged inconsistent sworn testimony to the Court in their prior motions, and presented the same evidence in those motions.  The Court has carefully considered the parties' arguments and issued several rulings regarding those issues.  The undersigned accordingly concludes that it can fairly decide this motion without conducting an evidentiary hearing on those same issues already considered by the Court.  To do so would require the compounding of the litigation well beyond what seems reasonable.

*litigation*

Defendants argue that they are the "prevailing party" in this litigation because: (1) Plaintiff's Lanham Act claim was dismissed; (2) Plaintiff's preliminary injunction was vacated; and (3) all remaining state law claims were dismissed without prejudice. Defendants argue that "[w]here the Plaintiff initiates an action in federal court with only one predicate for federal jurisdiction and that count is dismissed, along with all other causes of action included in the complaint and counterclaim at the Court's direction, no conclusion can be reached other than the Defendants were the prevailing party." (Dkt. 130).

Plaintiff responds that Defendants offer no legal analysis as to why they are the prevailing party in this litigation. Plaintiff points out that: (1) Defendants acknowledge in their motion that Plaintiff received preliminary injunctive relief granting most of the goals sought by Plaintiff; (2) Plaintiff's claims under the Lanham Act were dismissed for lack of jurisdiction; (3) the Court granted summary judgment on Defendants' trade secret claims and found that Plaintiff was the owner of the technology at issue in this litigation; and (4) the Court dismissed all remaining state law claims without prejudice. Plaintiff further argues that Defendants were unsuccessful on their "repeated motions to dismiss for failure to

11

state a claim under the Lanham Act and on their summary judgment motion."[3]
Plaintiff argues that if there is any prevailing party in this litigation, it is Plaintiff.

As stated above, "[t]o be a prevailing party, a party must receive at least some relief on the merits of [its] claim such as a judgment, an injunction, or a consent decree." *Associated General Contractors*, 5 Fed. Appx. at 377 (6th Cir. 2001). It is undisputed that the Court here dismissed Plaintiff's Lanham Act claim for lack of jurisdiction, after Plaintiff waived any and all claims to legal remedies arising out of the claims in its complaint, including money damages, and failed to allege any continuing threat of future injury that could be redressed by the issuance of a permanent injunction. (Dkt. 116, p. 4). Courts have held that a dismissal for lack of jurisdiction, as in this case, does not constitute an adjudication on the merits for purposes of determining a "prevailing party." *See Associated General Contractors*, 5 Fed. Appx. at 377 (concluding that district court did not reach the merits of the case because it dismissed the case for lack of jurisdiction); *see also Jenkins v. Whitley*, 2007 WL 1725258, at *1 (E.D. Tenn. June 12, 2007) ("Dismissal for lack of subject matter jurisdiction is not an adjudication on the merits, . . . and does not produce a prevailing party under §

---

[3] Plaintiff also notes that this Court has declined Defendants' requests for attorney fees in their motion for summary judgment (Dkt. 57), "renewed" motion to dismiss (Dkt. 94), "corrected renewed" motion to dismiss (Dkt. 99), and two motions to compel (Dkt. 50, 69). (Dkt. 125, p. 14 n.4).

1988(b)); *Keene Corp. v. Cass*, 908 F.2d 293, 297-98 (8th Cir. 1990) (where a complaint is dismissed for lack of subject matter jurisdiction, the defending party has not "prevailed" on the merits). A dismissal for lack of standing is not considered to be on the merits, even if the order of dismissal nominally states otherwise. *Wisznia v. City of Albuquerque*, 135 Fed. Appx. 181, 186 (10th Cir. 2005) (collecting cases); *see also Detroit Fire Fighters Ass'n v. City of Detroit*, 449 Mich. 629, 633; 537 N.W.2d 436 (1995) ("Standing does not address the ultimate merits of the substantive claims of the parties."); *Media v. Technologies Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003) ("Because standing is jurisdictional, lack of standing precludes a ruling on the merits.") (citations omitted).

Defendants argue that "[w]hen a court dismisses a party's claim under the Act, the opposing party can be the prevailing party by virtue of the dismissal." (Dkt. 147, p. 1). However, that the Court dismissed Plaintiff's Lanham Act claim as a result of Plaintiff's waiver of legal remedies does not render Defendants the prevailing party here. "Voluntary dismissal of an action ordinarily does not create a prevailing party [under the Lanham Act] because in order to create a prevailing party there must be a 'judicially sanctioned change in the legal relationship of the parties.'" *Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1215 (10th Cir. 2010) (citing *Buckhannon*, 532 U.S. at 605). The Court's dissolution of the preliminary

2:07-cv-13391-JAC-MJH   Doc # 152   Filed 01/28/13   Pg 14 of 27   Pg ID 4472

injunction–because Plaintiff only sought injunctive relief remedying Defendants'
allegedly deceptive *past* marketplace practices and failed to allege a continuing
threat of *future* injury that could be redressed by the issuance of a permanent
injunction–does not render Defendants' prevailing parties in this case.  "[A]
defendant who *defeats* an injunction cannot be a prevailing party if the denial . . .
is based on non-merits grounds."  *Id.* (concluding that "[b]ecause the district court
granted [defendant] no merits-based relief, [defendant] cannot demonstrate that he
was a prevailing party.").  Similarly, the court in *McKnight v. 12th Div.
Properties, LLC*, 709 F. Supp.2d 653 (M.D. Tenn. 2010), held that "a defendant in
a case that is involuntarily dismissed without prejudice is not a prevailing party for
purposes of Rule 54(d)" because such a dismissal "would not effectuate the
material alteration of the parties' legal relationship necessary to accord 'prevailing
party' status to the non-moving party . . . ."  *Id.* at 656.

Defendants rely on *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*,
771 F.2d 521, 524 (D.C. Cir. 1985) in support of their claim that they are the
prevailing party in this litigation.  The *Noxell* court dismissed the case for
improper venue and awarded fees to the defendant as the "prevailing party,"
finding that the suit was "exceptional."  However, *Noxell* is distinguishable
because in that case the court noted that the plaintiff chose to litigate its claim
against a California resident in Washington, D.C., "when a Supreme Court

decision *precisely* on point *plainly* declared the impropriety of that course" *id.* at 526-27, and thus concluded that plaintiff's attempt to lay venue in the District of Columbia was "barely plausible" and "unreasonable" and constituted harassment. *Id.* at 524.  The court found that "Congress intended to authorize fees for defendants subjected to 'harassment' by trademark owners," and that the defendants, "haled before a court some 3000 miles from the place of their activity, have encountered 'harassment' of the kind Congress meant to deter," and thus qualified as "prevailing parties" under Lanham Act.  Defendants here have produced no similar evidence of any such "harassment" that would render Defendants the prevailing party under the Lanham Act.

Therefore, the undersigned finds that Defendants were not the prevailing party in this litigation and thus are not entitled to attorney fees under 15 U.S.C. § 1117(a).  Accordingly, the undersigned **RECOMMENDS** that Defendants' motion for attorney fees pursuant to the Lanham Act be **DENIED**.

> **b.    Whether this case is "exceptional" under the Lanham Act**

Even if Defendants could demonstrate that they were the prevailing party in this litigation, Defendants also must show that this case is "exceptional" to be entitled to an award of attorney fees.  A case is "exceptional" where the defendant shows that the plaintiff brought an "oppressive" suit.  *See Eagles*, 356 F.3d at 728-

29.  In the Sixth Circuit, the "oppressive" standard applicable to prevailing defendants requires "an objective inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into the plaintiff's conduct during litigation." *Id.*

### I.       Objective Inquiry - Merits of Plaintiff's Claim

The objective inquiry looks at whether the suit was unfounded when it was brought. *Eagles*, 356 F.3d at 728-29.  The Sixth Circuit has held that "[w]here a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate." *Id.* at 728 (quoting *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 625 (6th Cir. 1999)).

Defendants argue that Plaintiff should have known that its claims were not well grounded in fact at the time it commenced this litigation.  However, Defendants here have no evidence to support their conclusory allegation that Plaintiff's lawsuit was unfounded when it was brought.  That the Court did not grant a permanent injunction but dismissed the complaint for lack of jurisdiction does not render Plaintiff's complaint unfounded.  *See also Hollister v. American Eagle Outfitters, Inc.*, 2005 WL 1076246, at *2 (S.D. Ohio May 5, 2005) (denying defendant's motion for attorney fees, finding that case was not "unfounded when it was brought," even though court granted summary judgment to defendant and

16

stated that the case was "undoubtedly weak"). It is undisputed that Plaintiff successfully obtained a preliminary injunction in this case. In granting the preliminary injunction, the Court found that Plaintiff was likely to recover on the merits of its Lanham Act and state law claims against the Defendants. (Dkt. 38). Further, as Defendants recognize, the "Amended Preliminary Injunction grant[ed] most of the goals sought by [Plaintiff]." (Dkt. 117, p. 5).[4]

Accordingly, the undersigned finds that there is no evidence that Plaintiff's complaint was unfounded when it was brought, and Defendants have failed to establish that this is an "exceptional" case warranting attorney fees under the Lanham Act. The undersigned therefore **RECOMMENDS** that Defendants' motion for attorney fees be **DENIED** for this reason as well.

### ii.  Subjective Inquiry - Plaintiff's Conduct

A second purpose of the attorney fee provision in the Lanham Act is to protect defendants against "harassment." *See Eagles*, 356 F.3d at 729. Thus, the

---

[4]Defendants argue that a case out of the Second Circuit is "[p]articularly relevant here," citing *New Sensor Corp. v. CE Distribution LLC*, 367 F. Supp.2d 283 (E.D.N.Y. 2005). However, that case is readily distinguishable because the *New Sensor* court had previously found, when granting summary judgment to defendant, that the plaintiff's false advertising claim was "objectively unreasonable" because plaintiff "failed to 'provide[] any evidence demonstrating a serious dispute regarding the truth of the statements on CE's website.'" *Id.* at 291. The Court here has made no similar findings of "objectively unreasonable" conduct, but rather found that Plaintiff was likely to succeed on the merits of its claims, and accordingly granted injunctive relief.

test for whether a case is oppressive also involves an inquiry into the plaintiff's conduct during the litigation. *Id.*

Defendants argue that this case is exceptional and warrants an award of attorneys' fees because they assert that Plaintiff exhibited bad faith and oppressive conduct in pursuing its claims against Defendants. Specifically, Defendants claim that Plaintiff falsely represented that Mr. Wiley originated and drew the float glass plans at issue and that Plaintiff bought and paid for those plans, as claimed. Defendants also argue that Plaintiff's response to a Request to Admit and Wiley's deposition testimony are contradictory and false. Specifically, Defendants state that Plaintiff and Mr. Wiley denied a request for admission that asked them to admit that they utilized Defendants' Muliaglass designs in preparing their conceptual drawings for the AUFGC and Saratov projects, but that Mr. Wiley subsequently stated in his deposition that he had used the drawings as a reference when preparing the drawings for the AUFGC project.

Plaintiff responds that nothing in this case shows Plaintiff's conduct to be "oppressive." Plaintiff argues that Mr. Wiley did not provide any false or contradictory testimony or evidence. First, Plaintiff asserts Mr. Wiley properly represented that he and those under his direction prepared the drawings for the AUFGC and Saratov projects, and that Mr. Wiley explained at his deposition how the drawings came about:

Q.   Did you make all of these drawings for AUFGC from your own head, or did you use some of the Stewart drawings in your work?

A.   The drawings which we made up, as I mentioned, came from my own years of experience, which is 40-some years now in glass, where I've been building and designing systems of refractoring steel. It comes from my experience in many projects before and after the Mulia project. And we did certainly use as a reference the ITC bath drawings, which were created by ITC and included many elements of the work which Stewart sold us under the Euroglass contract.

Q.   And is it true for Saratov as well?

A.   Yes.

(Dkt. 125, p. 10, citing Dkt. 61-3, pp. 130-31).

Plaintiff claims Defendants similarly misrepresent Plaintiff's response to a request to admit and Mr. Wiley's subsequent deposition testimony. Defendants' Request for Admission stated:

Admit that [Plaintiff] has used, is using or plans to use [Defendants'] designs, or components thereof, in the Arabian United Float Glass Company ("AUFGC") project and/or any other float glass manufacturing plant projects, whether such projects have been completed, are in progress, or are in the planning stages.

RESPONSE: Denied.

(Dkt. 117-8). Plaintiff complains that Defendants did not define the terms "SEA's drawings" or "use," resulting in confusion. Plaintiff states that Mr. Wiley subsequently explained this answer further in his deposition:

19

Q.    I am trying to get behind that answer.  Did ITC use any of the conceptual drawings from the AUFGC project for the Saratov project?

A.    No.

Q.    None?

A.    Did we make use of them as a resource or did we deliver them as a product?  You said "use."  To me "use" is to put them in service for the project, no.

Q.    I had a broader meaning for the word "use."  Were you able to use in any way the AUFGC drawings in designing the Saratov project for the conceptual drawing?

A.    We used the AUFGC drawings and other drawings in our ownership and knowledge, and our general knowledge of float glass design generally to produce the Saratov project, so, yes, they were one resource.

(Dkt. 125, p. 11 (citing Dkt. 61-3, p. 341)).  Plaintiff argues that because none of the Muliaglass designs were "put into service for the AUFGC project," Mr. Wiley's answer was correct.  Thus, Plaintiff argues that the allegations in Defendants' motion are not supported, but that even if they were true, they would not establish oppression so that this could be considered an exceptional case.

The undersigned finds that Defendants have failed to meet their burden to show that Plaintiff engaged in oppressive conduct sufficient to make this an exceptional case under 15 U.S.C. § 1117(a).  Defendants' same arguments have already been made in extensive briefing to the Court during the course of this

litigation, and this Court has not found the statements to be false or fraudulent.
This Court originally stated when granting Plaintiff summary judgment on
Defendants' claim for interference with a business relationship or expectancy that
"the record does not support [Defendants'] claim that Wiley and/or [Plaintiff]
definitively 'lied' when he told members of the Arabian United Float Glass project
team that he personally prepared the basic, conceptual float bath design for the
project." (Dkt. 80, p. 20). The Court subsequently noted on reconsideration the
"apparent inconsistency between Wiley's deposition testimony and the
representations to his business prospects that he had personally prepared certain
design work," but noted only that "this evidence gives rise to a genuine issue of
material fact as to whether the Plaintiff engaged in wrongful acts" in connection
with Defendants' claim for interference with a business relationship or
expectancy. (Dkt. 106, p. 8). An "apparent inconsistency" giving rise to a fact
question does equate to a finding of fraud or misrepresentation. Defendants
cannot now seek to re-litigate that finding at this stage.

The undersigned finds that Defendants have failed to meet their burden to
show that Plaintiff filed suit in order to harass Defendants. Plaintiff prevailed on
its preliminary injunction, with the Court finding that Plaintiff was likely to
succeed on the merits of its claims. Plaintiff also successfully defeated two of
Defendants' claims on summary judgment, and Defendants' motion for partial

summary judgment was denied.  The Court dismissed Plaintiff's Lanham Act

claim on jurisdictional grounds and not on merits, and dismissed the remaining

state law claims without prejudice.  Defendants have shown, at best, a mere

dispute regarding whether Mr. Wiley "used" the Muliaglass drawings and whether

Mr. Wiley's deposition testimony is inconsistent with his response to a request to

admit, which does not render this case "exceptional" or "oppressive."

Whether to award attorney fees is a matter within the court's discretion.  *See*

*Audi AG*, 469 F.3d at 550.  After carefully considering Defendants' argument and

the circumstances of this case, the undersigned finds that neither Plaintiff's

initiation of the suit nor its conduct during the litigation were so clearly improper

as to deem this an "exceptional" case.  Under the circumstances presented here,

the undersigned concludes that Plaintiff's suit was not "oppressive."  Therefore,

because it is not an "exceptional case," the undersigned **RECOMMENDS** that

Defendants' motion for attorney fees under the Lanham Act be **DENIED**.

### B.    Motion for Fees Under the Court's Inherent Power

#### 1.    <u>Legal Standard</u>

In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991), the Supreme Court

recognized a federal court's inherent power to sanction bad-faith conduct in

litigation.  *See also BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th

Cir. 2010) ("a court may assess attorney fees against a party under the court's

inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.").  To impose sanctions for bad-faith litigation under its inherent power, the court must find: (1) the claims advanced were meritless; (2) counsel for the offending party knew or had reason to know the claims were meritless; and (3) the motive for filing the suit was an improper purpose such as harassment.  *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002).  The Sixth Circuit has held that "'bad faith' [or 'conduct that was tantamount to bad faith'] is a requirement for the use of the district court's inherent authority . . . ."  *Id.* at 519.  The Supreme Court in *Chambers* stressed the importance of exercising caution when relying on the Court's inherent powers to ensure compliance "'with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees.'"  *See First Bank of Marietta*, 307 F.3d at 511 (quoting *Chambers*, 501 U.S. at 50).

The Sixth Circuit has held that the "'mere fact that an action is without merit does not amount to bad faith.'"  *BDT Prods.*, 602 F.3d at 753 (quoting *Miracle Miles Assocs. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980)).  Rather,

> the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings. Examples of "something more" include: a finding that the plaintiff filed the suit for purposes of harassment or delay, or for other improper reasons, a finding that the plaintiff filed a meritless lawsuit

23

and withheld material evidence in support of a claim, or a finding that
a party was delaying or disrupting the litigation or hampering
enforcement of a court order.

*Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (emphasis in original,

citations and alteration omitted).

### 2.    <u>Legal Analysis</u>

Defendants argue that the same facts which render this case "exceptional"

also support their claim that the Court should award them their attorney fees under

the Court's inherent powers.  Defendants argue that Plaintiff's claimed bad faith

"goes straight to the heart of the justice system."

Plaintiff responds that for the same reasons the Defendants are unable to

demonstrate that this is an "exceptional" case warranting attorney fees under the

Lanham Act, Defendants cannot show that Plaintiff acted with bad faith sufficient

to sustain an award of attorney fees pursuant to the Court's inherent powers.

For the same reasons as set forth above, the undersigned finds that

Defendants have failed to show that Plaintiff's claims were meritless, or that

Plaintiff knew or had reason to know the claims were meritless, or that Plaintiff

had an improper motive for filing the suit such as harassment, as required to show

that Plaintiff has acted in bad faith, vexatiously, wantonly, or for oppressive

reasons.  *See BDT Prods.*, 602 F.3d at 752.  Plaintiff prevailed on its preliminary

injunction, with the Court finding that Plaintiff was likely to succeed on the merits

24

of its claims. Plaintiff also successfully defeated two of Defendants' claims on summary judgment, and Defendants' motion for partial summary judgment was denied. The Court dismissed Plaintiff's Lanham Act claim on jurisdictional grounds and not on merits, and dismissed the remaining state law claims without prejudice. Moreover, Defendants have shown, at best, a mere disputed issue of fact as to whether Mr. Wiley "used" the Muliaglass drawings and whether Mr. Wiley's deposition testimony is inconsistent with his response to a request to admit, which does not support a finding of bad faith sufficient to support an award of fees under the Court's inherent powers.[5]

Accordingly, the undersigned **RECOMMENDS** that Defendants' motion for attorney fees pursuant to the Court's inherent powers be **DENIED**.

## IV.   RECOMMENDATION

------

[5] Defendants' reliance on *Perichak v. Int'l Union of Elec. Radio & Machine Workers, Local 601, AFL-CIO*, 715 F.2d 78 (3d cir. 1983) is inapposite. In that case, the court, while not making an express finding of "bad faith" or oppressiveness, did make findings that the evidence against plaintiff "was sufficient for a finding of his guilt beyond a reasonable doubt that he had stolen [his employer's] property," that plaintiff's explanation was "incredible," and that plaintiff made a "material false statement under oath," and, in addition, the court rejected *all* of plaintiff's testimony because of his false explanations under oath. *Id.* at 83. The Court of Appeals held that the district court's findings that plaintiff's merits case was "nonexistent at the time of its commencement" and that "after almost three years of pretrial discovery, not an iota of evidence was uncovered to bolster [plaintiff's] case," constituted sufficient evidence of bad faith to justify an award of attorney fees to defendant. *Id.* at 83, 87. Conversely, the Court here did not make any similar findings regarding Plaintiff's case or evidence presented.

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' motion for attorney fees be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

                                         s/Michael Hluchaniuk
Date:  January 28, 2013                   Michael Hluchaniuk
                                         United States Magistrate Judge

### CERTIFICATE OF SERVICE

I certify that on January 28, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Robert C.J. Tuttle, Robert C. Brandenburg, David E. Plunkett, and Jerome B. Greenbaum.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov

27